**UNITED STATES of America,**
**Appellee,**

v.

**David KLEIN, Pinhas Ben-**
**Ari, Defendants,**

**Isaac Dayan, Defendant–Appellant.**

**Docket Nos. 05–3443–CR(L),**
**05–4199–CR(CON).**

United States Court of Appeals,
Second Circuit.

Argued: April 24, 2006.

Decided: Feb. 5, 2007.

As Corrected March 8, 2007.

---

Richard A. Greenberg (Steven Y. Yurowitz, on the brief), Newman & Greenberg, New York, New York, for Defendant–Appellant.

Marc A. Weinstein, Assistant United States Attorney, (Michael J. Garcia, United States Attorney for the Southern District of New York, on the brief, Katherine Polk Failla, Assistant United States Attorney, of counsel), United States Attorney's Office for the Southern District of New York, New York, New York, for Appellee.

Before: KEARSE, WINTER, and WALKER, Circuit Judges.

WINTER, Circuit Judge.

Isaac Dayan appeals from his conviction by a jury and sentencing by Judge Baer for one count of conspiracy to commit bank fraud, one count of bank fraud in connec- tion with a check-kiting scheme, and one count of fraudulently obtaining a bank loan.

Appellant advances numerous claims of error underlying his conviction, all but two of which are disposed of in a companion summary order filed this day (February 5, 2007). This opinion addresses his claims that the indictment was defective because it failed to state that his allegedly fraudulent conduct was material and that the order of restitution was unlawful because it explicitly precluded joint and several liability even though appellant's responsibility for the criminal acts was shared with other defendants. We affirm the conviction but remand the restitution order for further proceedings.

## BACKGROUND

We view the evidence in the light most favorable to the government. *United States v. Ford*, 435 F.3d 204, 206 (2d Cir. 2006).

Appellant, a wholesale diamond dealer, was involved in a check-kiting scheme with other diamond dealers. Between December 1999 and March 2000, one Jacob Haas exchanged checks with appellant worth millions of dollars. The checks purported to be payments for purchases and sales of diamonds but no diamonds changed hands. When checks were exchanged, Haas and appellant would deposit the checks on the same day so that the respective checks would not bounce. These transactions covered shortfalls in Haas's bank account at the Merchants Bank of New York ("MBNY"). They pre-dated the checks to disguise the scheme from the banks. They would also issue different numbers of checks to each other and avoided round numbers to create the appearance of actual diamond transactions. Other diamond dealers and firms joined the scheme, including David Klein (a co-defendant here),

Meglark, Alison Gem, and Fine Diamonds. In September of 2000, Sammy Maslaton joined the scheme, exchanging over $1 million in checks with appellant on a single day. Appellant continued to kite checks with others involved in the scheme through early 2001. In all, tens of millions of dollars were exchanged with no assets backing up the checks.

In February and March 2001, some of the checks failed to clear, causing overdrafts in Haas's and Klein's accounts. MBNY stopped crediting Haas's and Klein's accounts, and the scheme collapsed, leaving appellant's accounts overdrawn by approximately $75,000.

Appellant also used the falsely inflated bank balances to support false sales figures that he included in loan applications to banks. Through his company Fortune Diamond Importers, he applied for a $100,000 loan from Chase Manhattan Bank in 1999, which granted him a $75,000 line of credit, a $75,000 loan from North Fork Bank, which granted it, and a $100,000 loan from Fleet National Bank, which also granted it. Appellant's accountant had created his general ledgers and financial statements using the firm's bank account statements, counting each check accepted from the co-conspirators as a diamond sale. (Appellant's tax returns showed much more modest sales). Appellant later asked Chase to increase his line of credit to $250,000, but Chase refused to do so.

Dayan was indicted on one count of conspiracy to commit bank fraud, one count of bank fraud in connection with the check-kiting scheme, and two counts of bank fraud for fraudulently obtaining loans from North Fork and Fleet. Two other defendants, David Klein and Pinhas Ben–Ari, pleaded guilty to various counts of the same indictment. Dayan was tried in December 2004 and was convicted by a jury on three of the four counts; he was acquitted of bank fraud against North Fork.

On June 15, 2005, Dayan was sentenced to 37 months' imprisonment, followed by three years of supervised release, and res-titution of $1.1 million. Believing that the Probation Department could not administer joint and several liability for restitutive amounts that differed among multiple defendants, the court explicitly directed that appellant's restitution obligation not be joint and several.

## DISCUSSION

■■■ We first address the claim that the indictment was defective because it failed to state that appellant's fraudulent acts were material. It is true that a bank fraud conviction requires a showing that the fraudulent conduct was material, *Neder v. United States*, 527 U.S. 1, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), although the bank fraud statute does not contain that actual word. 18 U.S.C. § 1344. In *Neder*, the Supreme Court held that materiality was an element of bank fraud because the word fraud incorporated fraud's "well-settled meaning at common law"—a "misrepresentation or concealment of *material* fact." *Id.* at 22, 119 S.Ct. 1827. Appellant claims, therefore, that the indictment is insufficient because it does not explicitly use the word "material." Appellant did not raise this issue in the district court, and thus we review only for plain error. *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir.2006) (per curiam).

There was no error. If materiality can be inferred to be an element of criminal fraud because of the well-understood meaning of "fraud" as a legal term, an allegation of materiality can be inferred from use of the word fraud in the indictment. Moreover, as commonly understood among both lawyers and laypersons, "fraud" refers to conduct or speech intended to mislead the putative victim into parting with money or property. *See United States v. Resendiz–Ponce*, — U.S. —, 127 S.Ct. 782, 784, 166 L.Ed.2d 591 (2007) (agreeing with the Government that "the indictment at bar implicitly alleged that respondent engaged in the necessary overt act simply by alleging that he attempted to

enter the United States," because "[n]ot only does the word "attempt" as used in common parlance connote action rather than mere intent, but more importantly, as used in the law for centuries, it encompasses both the overt act and intent elements" of the crime of attempted illegal reentry (internal quotation marks omitted)). The materiality of the misleading conduct or speech is therefore at the heart of the word "fraud." Conduct or speech that is immaterial—irrelevant—to a putative victim cannot be fraud. Finally, each of the counts on which appellant was convicted contained an allegation that he obtained money or credit "by means of false or fraudulent . . . representations." Again, one cannot fraudulently induce a victim to part with money or credit "by means of" immaterial representations.

■ Appellant also claims that the restitution order must be vacated and remanded because it precludes joint and several liability with others among whom he shares culpability. The jury found Dayan responsible for over $800,000 on Count One, over $1.5 million on Count Two, and over $70,000 on Count Four. At the sentencing, the district court downwardly departed four levels to the loss range suggested by defense counsel, of $200,000 to $350,000, on the grounds that the $1.5 million loss was greater than Dayan's culpability. However, the order of restitution of $1.1 million imposed on appellant is the sum of co-conspirator Klein's $600,000 outstanding liability to MBNY and of co-conspirator Haas's $500,000 outstanding liability to the same bank. Dayan had already returned amounts covering his own overdrafts.

The district court's calculation of restitution was erroneous because co-defendants may be proportionally or jointly and severally liable for restitution when they are all culpable, *see* 18 U.S.C. § 3664(h), and the government concedes that the district court's view that the Probation Department cannot administer varying restitution amounts that are joint and several is "mistaken." The error in precluding joint and several liability may have led to a combination of restitution orders that exceeds the bank's losses. *United States v. Nucci,* 364 F.3d 419, 423 (2d Cir.2004) (finding that under 18 U.S.C. § 3664(f)(1)(A), (h), (j)(2), a given victim may not receive compensation in excess of his loss, thus effectively requiring proportional or joint and several liability for co-defendants). If so, appellant's obligation must be adjusted to prevent such an outcome. Moreover, the lack of joint and several liability may have induced further error in apportioning the amount of restitution for which appellant should be responsible. We therefore remand to the district court so that it may recalculate the amount and terms of Dayan's restitution in light of its authority to order proportionate or joint and several liability.

## CONCLUSION

We affirm the conviction but vacate the restitution order and remand for further proceedings in accordance with this opinion.