RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 06-3016

DON S. MCAULIFFE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 03-00070—Algenon L. Marbley, District Judge.

Argued: January 26, 2007

Decided and Filed: June 22, 2007

Before: MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** David J. Graeff, Westerville, Ohio, for Appellant. Michael A. Rotker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** David J. Graeff, Westerville, Ohio, for Appellant. Michael A. Rotker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Kevin W. Kelley, David M. DeVillers, ASSISTANT UNITED STATES ATTORNEYS, Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge. On March 8, 2002, a fire destroyed the Millersport, Ohio, lakeside residence of defendant-appellant Don S. McAuliffe, a duly-elected sitting judge of the Fairfield County Municipal Court, Lancaster, Ohio. At the time of the fire, defendant was vacationing in the Virgin Islands. Defendant twice sent verified proof of loss claim forms to his insurer, Grange Mutual Casualty Company ("Grange"), via United States mail, representing in the forms that "the cause and origin of the said loss were: UNKNOWN TO CLAIMANT." Defendant eventually settled his claim for $235,000. He used the insurance proceeds to pay off the mortgage on the destroyed property and a car loan, and to make a down payment on another parcel of real estate. Federal, state, and local authorities, however, became suspicious that the fire had been purposefully set by defendant and a business partner, Darrell Faller, as part of a scheme to defraud the insurance company.

1

On April 23, 2003, following an investigation into the matter, a federal grand jury in the Southern District of Ohio indicted defendant on charges of mail fraud, in violation of 18 U.S.C. § 1341 (Counts One and Two); using fire to commit mail fraud, in violation of 18 U.S.C. § 844(h)(1) (Count Three); conspiring to use fire to commit mail fraud, contrary to 18 U.S.C. § 844(m) (Count Four);[1] and money-laundering, in violation of 18 U.S.C. § 1957 (Counts Five and Six). The indictment sought forfeiture of the insurance proceeds, as well as the real and personal property acquired with those proceeds.

Following a nearly three-week jury trial, defendant was convicted as charged on all counts. The district court originally sentenced defendant to 207 months of imprisonment; specifically, 60 months on Counts One and Two; 87 months on Counts Four, Five, and Six, to run concurrently to each other and to the sentences on Counts One and Two; and 120 months on Count Three, to be served consecutively. Defendant filed a timely notice of appeal and, while the appeal was pending, this court remanded for re-sentencing in light of the newly issued decision in *United States v. Booker*, 543 U.S. 220 (2005). Defendant was re-sentenced to a total of 156 months of imprisonment: concurrent sentences of 36 months on Counts One, Two, Four, Five, and Six, and a consecutive sentence of 120 months on Count Three. A final order of forfeiture was entered by the court. The amended judgment of conviction and sentence was entered on December 20, 2005, the same date on which defendant filed the present appeal.[2]

In his appeal, defendant challenges the sufficiency of the evidence and alleges, *inter alia*, that defects in the indictment and improper constructive amendments to it mandate reversal of his convictions. For the reasons set forth below, we affirm.

I.

Defendant first alleges numerous deficiencies in the indictment and maintains that the indictment was constructively amended through the jury instructions given by the district court. Defendant concedes that he did not raise these challenges below; thus, review is for plain error. FED. R. CRIM. P. 52(b); *United States v. Cotton*, 535 U.S. 625, 631-32 (2002).

We review the sufficiency of an indictment de novo. An indictment is generally sufficient if it "fully, directly, and expressly . . . set[s] forth all the elements necessary to constitute the offense intended to be punished." *United States v. Douglas*, 398 F.3d 407, 411 (6th Cir. 2005) (internal citation and quotation marks omitted). In particular, the indictment must: (1) "set out all of the elements of the charge[d] offense and must give notice to the defendant of the charges he faces[,]" and (2) "be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *Id*. at 413 (internal citation omitted). "An indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992). However, the recitation of statutory language "'must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged.'" *Id*. (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)).

---

[1] Count Four inadvertently referenced 18 U.S.C. § 844(n); the district court allowed the Government to amend the indictment to substitute subsection (m) for (n).

[2] A corrected amended judgment of conviction was later entered on January 11, 2006, modifying only the portion of the judgment pertaining to restitution. Pursuant to the amendment, defendant was ordered to pay immediately a fine of $150,000, make restitution of $235,000, and forfeit two pieces of real estate, along with a vehicle. Defendant was ordered to liquidate his accounts in order to satisfy these obligations.

The indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications. *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996) (en banc). An indictment is to be construed liberally in favor of its sufficiency. *United States v. Davis*, 306 F.3d 398, 411 (6th Cir. 2002).

Here, defendant contends that Counts One and Two of the indictment, which allege violations of the mail fraud statute, 18 U.S.C. § 1341, do not adequately set forth two of the requisite elements of that offense: (1) that defendant acted willfully with an intent to defraud, and (2) that a "material" misrepresentation was made.

The mail fraud statute prohibits the use of the mails by any person "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . ." 18 U.S.C. § 1341. "Mail fraud consists of (1) a scheme or artifice to defraud; (2) use of mails in furtherance of the scheme; and (3) intent to deprive the victim of money or property." *United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006). Materiality of falsehood is a requisite element of mail fraud. *Neder v. United States*, 527 U.S. 1, 25 (1999). The misrepresentation "must have the purpose of inducing the victim of the fraud to part with the property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003). A misrepresentation "is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." *Neder*, 527 U.S. at 16 (internal citation and quotation marks omitted).

The requisite intent to defraud requires "an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself." Sixth Circuit Pattern Jury Instruction 10.01(2)(E); *see also United States v. Frost*, 125 F.3d 346, 371 (6th Cir. 1997). With regard to both elements at issue, an indictment is not fatally insufficient for its failure to allege these elements *in haec verba*, if the facts alleged in the indictment warrant the inference of such elements, i.e., materiality and intent to defraud. *United States v. McGough*, 510 F.3d 598, 602 (5th Cir. 1975) (materiality); *United States v. Hoag*, 823 F.2d 1123, 1126 (7th Cir. 1987) (intent to defraud).

In this case, the indictment more than adequately alleges the elements of materiality and intent to defraud. Paragraph 1 of the indictment includes in the allegations the statutory language of § 1341. Paragraph 5 of the indictment alleges that defendant "falsely represented to Grange Insurance Company that the fire damage to the dwelling [at issue] and its contents was not caused by design or procurement on his part, though he then well knew otherwise." Paragraphs 6 and 7 similarly allege that defendant submitted two sworn proof of loss statements which "falsely represented" that the March 8, 2002, fire damage to the residence "had not been designed or procured by him . . . though he then well knew that his acts in planning and causing the fire damage eliminated his right to payment under the insurance policy." Certainly these allegations, that defendant's representation that the cause of the fire damage was unknown to him, related to a matter that had a "tendency" to influence Grange's decision to settle his claim. The indictment alleges that defendant made these misrepresentations "well knowing" that his role in the scheme barred his right to recover the insurance proceeds.

In addressing a similar claim involving the analogous bank fraud statute,[3] 18 U.S.C. § 1344, the Second Circuit Court of Appeals, in *United States v. Klein*, 476 F.3d 111 (2d Cir. 2007), recently held:

---

[3]The bank, mail, and wire fraud statutes all employ identical "scheme to defraud" language and thus are to be interpreted *in pari materia*. *United States v. Stavroulakis*, 952 F.2d 686, 694 (2d Cir. 1992); *United States v. Oren*, 893 F.2d 1057, 1060 n.1 (9th Cir. 1990).

It is true that a bank fraud conviction requires a showing that the fraudulent conduct was material, *Neder v. United States*, 527 U.S. 1, 25 (1999), although the bank fraud statute does not contain that actual word. 18 U.S.C. § 1344. In *Neder*, the Supreme Court held that materiality was an element of bank fraud because the word fraud incorporated fraud's "well-settled meaning at common law" – a "misrepresentation or concealment of *material* fact." *Id*. at 22. Appellant claims, therefore, that the indictment is insufficient because it does not explicitly use the word "material." Appellant did not raise this issue in the district court, and thus we review only for plain error. *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam).

There was no error. If materiality can be inferred to be an element of criminal fraud because of the well-understood meaning of "fraud" as a legal term, an allegation of materiality can be inferred from use of the word fraud in the indictment. Moreover, as commonly understood among both lawyers and laypersons, "fraud" refers to conduct or speech intended to mislead the putative victim into parting with money or property. *See United States v. Resendiz-Ponce*, 127 S. Ct. 782, 784 (2007) (agreeing with the Government that "the indictment at bar implicitly alleged that respondent engaged in the necessary overt act simply by alleging that he attempted to enter the United States," because "[n]ot only does the word 'attempt' as used in common parlance connote action rather than mere intent, but more importantly, as used in the law for centuries, it encompasses both the overt act and intent elements" of the crime of attempted illegal reentry (internal quotation marks omitted)). The materiality of the misleading conduct or speech is therefore at the heart of the word "fraud." Conduct or speech that is immaterial – irrelevant – to a putative victim cannot be fraud. Finally, each of the counts on which appellant was convicted contained an allegation that he obtained money or credit "by means of false or fraudulent . . . representations." Again, one cannot fraudulently induce a victim to part with money or credit "by means of" immaterial representations.

*Klein*, 476 F.3d at 113-14.

Contrary to defendant's argument, a reading of the indictment as a whole supports the government's position that Counts One and Two adequately aver the requisite elements of the offense of mail fraud. Moreover, defendant has not shown that the alleged deficiencies affected his substantial rights or the fairness, integrity, or public reputation of these proceedings, as required by a plain error analysis. *Cotton*, 535 U.S. at 631-32.

Defendant next alleges that the indictment misidentified "Grange Insurance Company" as the victim of his scheme, rather than the properly titled "Grange Mutual Casualty Company." This argument is without merit – generally, the identity of the victim of a fraudulent scheme is not an essential element that the government is required to prove, *United States v. Otto*, 850 F.2d 323, 326 (7th Cir. 1988); *United States v. Trapilo*, 130 F.3d 547, 552 (2d Cir. 1997), and, in any event, defendant has shown neither that he was prejudiced as a result of the error in the description nor that he lacked notice as a result of the claimed mistake. Indeed, in his written communications with his insurer, he referred to the company as either "Grange" or "Grange Insurance."

Defendant further claims that Count Three, which alleges a violation of 18 U.S.C. § 844(h)(1), does not charge him with an offense cognizable under federal law. Defendant complains that certain language in Count Three, stating that defendant "damaged" or "destroyed" his home "by means of fire," contains terminology that also appears in 18 U.S.C. § 844(i), the arson statute which was not the basis for the indictment. Defendant in essence argues that the indictment blurs the requisite elements of the crime with which he was charged and "[b]eing convicted for committing and conspiring to commit a hybrid law (a bit of § 844(h) and a bit of § 844(i)) not

created by Congress is a plain error that 'seriously affects the fairness, integrity, or public reputation.'"

McAuliffe's argument is indeed without merit, as the government argues. Section 844(h)(1) makes it a crime to "use[] fire or an explosive to commit any felony which may be prosecuted in a court of the United States[.]" Count Three of the indictment alleges that on or about March 8, 2002, defendant "knowingly used fire to commit mail fraud, as more fully set forth in Counts One and Two, incorporated herein by reference, in violation of 18 U.S.C. § 1341, a felony prosecutable in a court of the United States. In violation of 18 U.S.C. § 844(h) and § 2." These allegations mirror the statutory text and are sufficiently accompanied by such facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged. The mere fact that some of the operative terms of § 844(i) appear in the indictment does not diminish the fact that Count Three sufficiently alleges a violation of § 844(h).

Defendant also maintains that the jury instructions constructively amended the indictment and therefore require reversal of his convictions. Specifically, he complains that, although Counts One and Two of the indictment "correctly" charged him with "devis[ing] a scheme and artifice to defraud, *and* for obtaining money and property by means of false and fraudulent pretenses, representations and promises," (emphasis added), the jury instructions improperly substituted the disjunctive "*or*" for the italicized "*and*." Defendant contends that this had the effect of broadening the bases for conviction beyond what the grand jury had alleged, in violation of his Fifth Amendment rights.

"A constructive amendment to the indictment occurs when 'the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of an offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *United States v. Manning,* 142 F.3d 336, 339 (6th Cir. 1998) (quoting *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986)). A defendant bears the burden of proof on this issue. *United States v. Rashid*, 274 F.3d 407, 414 (6th Cir. 2001). "A constructive amendment to the indictment constitutes a per se violation of the fifth amendment's grand jury clause." *United States v. Syme*, 276 F.3d 131, 148 (3d Cir. 2002) (internal quotation omitted).

Title 18 U.S.C. § 1341, however, uses the disjunctive "or," not "and" ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . ."). "It is settled law that an offense may be charged conjunctively in an indictment where a statute denounces the offense disjunctively. Upon the trial, the government may prove and the trial judge may instruct in the disjunctive form used in the statute." *United States v. Murph*, 707 F.2d 895, 896 (6th Cir. 1983) (internal citation omitted). A constructive amendment claim has thus been rejected in the present context. *See United States v. Stone*, 954 F.2d 1187, 1192 (6th Cir. 1992) (involving similar language in bank fraud statute, 18 U.S.C. § 1344). Thus, defendant's contention in this regard is without merit, as are his remaining claims pertaining to alleged constructive amendments to the indictment.

## II.

Defendant next challenges his convictions and sentences stemming from Counts Three and Four of the indictment. 18 U.S.C. § 844(h)(1) provides that "[w]hoever . . . uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States" shall "in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years." Subsection (m) covers *conspiracy* to commit an offense under subsection (h). As previously noted, the indictment charged defendant with the underlying offense of using fire to commit mail fraud in violation of 18 U.S.C. § 1341. Defendant contends that, pursuant to §§ 844(h) and (m), the

requirement that "fire" be "used to commit" mail fraud was not met because if he committed mail fraud, he did so by using the mails, not by "using" fire.

McAuliffe's interpretation of the statute, however, has been considered and rejected by several courts. In *United States v. Ruiz*, 105 F.3d 1492 (1st Cir. 1997), the First Circuit Court of Appeals rejected this construction of the statute urged by the present defendant and by the defendants therein. Construing the word "use" in accord with its ordinary or natural meaning, the court noted that "use" generally means "[t]o convert to one's service," "to employ," "to avail oneself of," and "to carry out a purpose or action by means of." 105 F.3d at 1503 (internal citations and quotation marks omitted). The *Ruiz* court opined:

> We think it plain that the defendants "used" fire to commit mail fraud within the meaning of § 844(h)(1). The defendants set fire to Brothers Fashions "to carry out" their scheme to deceive the insurance company into making payment for claimed losses. Specifically, the fire constituted "the means" by which the defendants attempted to create the appearance of a legitimate loss of insured items. While the defendants also "used" the mails in furtherance of the scheme to defraud, that does not diminish the fact that, additionally, they "employed" or "availed themselves of" fire to effect their scheme. Finally, the defendants make no argument that the placement and purpose of the word "use" in its statutory context undermine the applicability of § 844(h)(1) here. *See Bailey* [*v. United States*], 516 U.S. [137 (1995)] at [143] (considering disputed language in the context of overall statutory scheme). No basis for such an argument is apparent.

105 F.3d at 1503-04 (internal citation and footnotes omitted). *See also United States v. Zendeli*, 180 F.3d 879, 885 (7th Cir. 1999) ("As the First Circuit held in [*Ruiz*], a defendant uses fire to commit mail fraud under § 844(h) when he initiates a fire as part of a scheme to deceive an insurance company into making payments for claimed losses. Under such circumstances, fire constitutes the means by which the individual attempts to create the appearance of legitimate loss of an insured item.") (internal citation omitted).

The Eighth Circuit Court of Appeals recently endorsed this position as well, favorably citing *Ruiz* in a decision upholding a § 844(h)(1) conviction arising from a fire-related insurance fraud scheme involving the mails. *See United States v. Ihmoud*, 454 F.3d 887, 890-91 (8th Cir. 2006).

We agree with our sister circuits' reasonable interpretation of the statute and add that such a construction of the statute is consistent with the legislative history of § 844(h), which indicates that "fire" was added to this statute (originally, only "an explosive" was designated) in 1982, because it was recognized that fire is commonly and extensively used not only for extortion, but for insurance fraud as well. Anti-Arson Act of 1982, Pub. L. No. 97-298, 96 Stat. 1319; *see* H.R. Rep. 678, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.C.C.A.N. 2631, 2632 (1982).[4] Thus, § 844(h)(1) creates a federal offense with an enhanced penalty for persons who commit crimes "that do not require but may involve the use of fire." *United States v. Patel*, 370 F.3d 108, 117 (1st Cir. 2004). Defendant's argument is without merit.

---

[4]"We are mindful of the limited utility and reliability of legislative history. In this regard, 'the authoritative statement is the statutory text, not the legislative history or any other extrinsic material.' *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005)." *City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, n.6 (6th Cir. 2007).

III.

In an argument raised for the first time on appeal, defendant argues that because 18 U.S.C. §§ 844(h) and (m) do not bear a sufficient nexus to interstate commerce, these provisions are not a valid exercise of Congress's commerce clause power. Consequently, he contends, they are unconstitutional in light of *United States v. Lopez*, 514 U.S. 549 (1995), because these subsections "have nothing to do with 'commerce' or any sort of economic enterprise" and contain "no jurisdictional element which would ensure . . . that the [alleged illegal act] in question affects interstate commerce." *Lopez*, 514 U.S. at 561.

Although this court has not addressed this specific issue, in *United States v. Creech*, 408 F.3d 264 (5th Cir. 2005), the Fifth Circuit Court of Appeals expressly rejected the argument now made by defendant:

> First, Creech raises a Commerce Clause challenge to 18 U.S.C. § 844(h), which provides an additional penalty for anyone who "uses fire . . . to commit any felony which may be prosecuted in a court of the United States." He essentially argues that because the statute does not require a jurisdictional nexus with interstate commerce to be proved in court, it does not come under Congress's authority to regulate interstate commerce. Because Creech did not raise this challenge below, we review for plain error. *See Johnson v. United States*, 520 U.S. 461, 467-68 (1997).
>
> Creech's argument fails because § 844(h)'s jurisdictional nexus is derived from the underlying felony, which must be one that "may be prosecuted in a court of the United States." By definition, then, a violation of § 844(h) must necessarily be based on an underlying crime that is properly within federal jurisdiction. *Cf. United States v. Pappadopoulos*, 64 F.3d 522, 528 (9th Cir. 1995) (finding that "Section 844(h) does not facially exceed Congress's commerce power because it requires that the underlying felony itself be one that can be prosecuted 'in a court of the United States.'"). Indeed, we have previously found a very similar statute, 18 U.S.C. § 924(c), "a valid exercise of Congress' commerce power, even though no specific nexus with interstate commerce is required for conviction." *United States v. Owen*, 996 F.2d 59, 61 (5th Cir. 1993).
>
> Here, the underlying felony crime was mail fraud in violation of 18 U.S.C. § 1341. Creech does not contend that § 1341 is an invalid exercise of Congress's Commerce Clause power. Consequently, we find that Creech's indictment and conviction under § 844(h) was not unconstitutional.

408 F.3d at 267 (footnote omitted).

Here, as in *Creech*, mail fraud, the underlying offense, is not challenged by defendant as violative of the Commerce Clause. We thus adopt the sound rationale of the court in *Creech* and, applying it to the present circumstances, conclude that defendant's Commerce Clause challenge cannot prevail.

In a related argument pertaining to the validity of his convictions under §§ 844(h) and (m), defendant notes that, pursuant to *Jones v. United States*, 529 U.S. 848 (2000), the arson of an owner-occupied private residence not used for any commercial purpose is not subject to prosecution under the arson statute, 18 U.S.C. § 844(i). Defendant maintains that the government circumvented this proscription, which would apply to the present circumstances involving a private residence, by charging defendant under § 844(h) but, in reality, trying the case as if it were an arson, not mail fraud, prosecution. Defendant also cites the *Ihmoud* court's reference to § 844(h)(1) as a provision involving "*arson* in furtherance of mail fraud," rather than the use of fire to commit mail fraud,

*Ihmoud*, 454 F.3d at 892 (emphasis added), as reinforcement for his claim that he was effectively but improperly convicted of arson, not mail fraud.

Defendant's reliance upon the *Jones* and *Ihmoud* decisions is misplaced. Unlike defendant, who could not be and was not in fact prosecuted for arson because his conduct in burning his own noncommercial residential home does not fall within the ambit of the arson statute, 18 U.S.C. § 844(i), as interpreted in *Jones*, the defendant in *Ihmoud* actually was charged with and convicted on charges of arson, conspiracy to commit arson, and the use of fire to commit mail fraud for his actions in setting fire to several commercial establishments to which the arson statute applies. *Ihmoud*, 454 F.3d at 888, 895. Moreover, the *Ihmoud* court's reference to "arson in furtherance of mail fraud" was made in the context of addressing the defendants' challenge to the district court's jury instructions using such language and its alleged failure to specify in the instructions that the underlying felony necessary to support a § 844(h) offense was mail fraud, not arson. The *Ihmoud* court noted that "[t]o the extent that there is ambiguity in the instructions, it is harmless. The evidence at trial overwhelmingly demonstrates that the purpose of the fire was to commit mail fraud by fraudulently collecting insurance payments." *Id*. at 893. Here, defendant's effort to characterize his convictions pursuant to Counts Three and Four as convictions for arson, rather than using fire to commit mail fraud, is unpersuasive, and plain error is not evident.

IV.

Defendant next challenges the sufficiency of the evidence. Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 at the close of the government's proofs, arguing that the evidence was insufficient to demonstrate that he and Faller conspired to burn down his residence. The district court denied the motion and, upon defendant's filing of a renewed post-trial motion for dismissal, the court issued an opinion and order, dated May 24, 2004, again denying the motion.

An order denying a motion for judgment of acquittal is reviewed de novo. *United States v. Kone*, 307 F.3d 430, 433 (6th Cir. 2002). This court reviews the evidence in a light most favorable to the prosecution, giving the prosecution the benefit of all reasonable inferences from the testimony. *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006). The relevant question in assessing a challenge to the sufficiency of the evidence is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

We agree with the district court that there was ample evidence on which to convict defendant. At trial, Faller testified as a witness for the government that he and defendant conspired to burn down defendant's house so that defendant could obtain the insurance proceeds and use the proceeds to demolish the house and rebuild it. They arranged for defendant to be out of town when Faller started the fire. Defendant's former girlfriend, Beth Westminster, also testified as a government witness, corroborating that Faller and defendant conspired to burn down the house with the ultimate purpose of rebuilding it. In their first attempt, defendant and Faller tried to rupture a gas line in the house; however, this attempt failed. Faller testified that he and defendant then made a second attempt to burn down the residence by placing a halogen lamp against a wall that they believed would ignite. This attempt was successful and, during the early morning hours of March 8, 2002, the house caught fire.

An insurance adjuster investigated the fire damage and observed fire damage on the lower level, but also noticed more extensive fire damage on the upper level of the home. Due to suspicions about the cause and origin of the fire, she then referred the matter to a consulting firm. Richard Marzola, an electrical engineer, took photos and collected debris from the site. He observed the burn patterns near the lamp, but also noticed a second set of burn patterns at the base of the stairs to the upper level. At his request, two experienced arson investigators were sent to the residence

for further investigation. The final report issued by Marzola's firm found neither evidence of a "foreign ignitable liquid" nor "an electrical malfunction or abnormality," but concluded, based on the two unrelated points of origination, that the "cause of this fire loss was an intentional human action." The report indicated that the burn patterns associated with the first point of origin (the lamp) on the lower level of the house indicated that the fire traveled up the wall and into the ceiling joists, but eventually self-extinguished and did not penetrate the second floor sub-floor. The patterns associated with the second point of origin (base of the stairs) indicated that the resultant fire "progressed up the stairs" and caused "extensive direct flame damage . . . throughout the second floor."

Grange Insurance sent defendant a reservation-of-rights letter stating in part that the fire at defendant's Northbank Road residence "has been determined to have been deliberately set." Two days later, the claims adjuster sent defendant a claim form entitled "Property Sworn Statement in Proof of Loss." It is undisputed that defendant returned the completed and notarized form to Miller via fax, with the original being sent by United States mail. In signing the form, defendant agreed "that the loss did not occur because of any act or design on [his] part" and that "[n]othing has been done to conceal or misrepresent any material facts concerning this claim, nor to deceive the company." In response to the first question on the form, defendant replied that "the cause and origin of the said loss were: UNKNOWN TO CLAIMANT." Defendant sought $361,925 for damages to the real and personal property.

On April 9, 2002, the claims adjuster sent a letter to defendant rejecting his claim for failure to provide sufficient detail and documentation. Defendant responded by letter, disputing her assertions and requesting a new adjuster. The successor adjuster who was assigned to defendant's claim settled defendant's claim in April of 2002 for $235,000. Pursuant to this settlement, defendant again was required to submit a signed and notarized "Property Sworn Statement in Proof of Loss (Revised)," which reiterated that the origin of the fire loss was "unknown to claimant." Defendant mailed this revised form to Grange via U.S. mail. Defendant thereafter received two settlement checks from Grange – one in the amount of $95,000 for the personal property claim, and the other for $140,000 for the real property loss. Defendant used the proceeds to pay off his mortgage on the residence, to pay off a loan on a vehicle, and to purchase another real estate parcel.

The business relationship between defendant and Faller thereafter soured, and Faller contacted an attorney, who in turn contacted an agent with the Bureau of Alcohol, Tobacco and Firearms ("ATF"). In exchange for his cooperation, Faller was granted immunity from prosecution. He described to authorities his role and defendant's involvement in the planning and execution of the fire for the purpose of obtaining insurance proceeds. Over the next two months, authorities recorded several conversations between defendant and Faller or Westminster.

Under the circumstances, and for the additional reasons further elaborated on by the district court in its thorough opinion and order denying defendant's Rule 29 motion, we conclude that there was sufficient evidence upon which a rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt. *Abboud*, 438 F.3d at 589. The district court therefore properly denied defendant's motion for judgment of acquittal.

V.

Defendant next maintains that certain recorded conversations between himself, Faller, and Westminster violated his Sixth Amendment right to counsel because at the time the conversations were recorded, the government's investigation had shifted purportedly from investigation to accusation, and the lawyer, Tully Rogers, whom defendant had already retained to represent him in his insurance dealings with Grange after the possibility of arson was raised, was not notified. Rogers had been retained by defendant months before any secret tapes were made. Defendant

asserts that the trial testimony reflected the widespread knowledge of the government's witnesses that Rogers represented defendant in the arson-related matter with his insurer. No evidence was presented that Rogers consented to the secret taping which was done without defendant's knowledge. Defendant argues, therefore, that all evidence garnered from these taped conversations must be suppressed.

McAuliffe acknowledges, however, that no motion to suppress was made to the district court. Defendant's claim is therefore subject to review for plain error. *United States v. Olano*, 507 U.S. 725, 736 (1993). No such error has occurred under the present circumstances.

As this court has explained in *United States v. Cope*, 312 F.3d 757, 772 (6th Cir. 2002):

> The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Statements elicited in violation of one's Sixth Amendment right to counsel must be suppressed. *Massiah v. United States*, 377 U.S. 201, 207 (1964). But "[t]he Sixth Amendment right [to counsel] . . . is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (internal quotation marks omitted).

"Once the Sixth Amendment right attaches, any governmental attempt to elicit information from the accused without the defendant's lawyer present, even through means that may be permissible under the Fifth Amendment right to counsel prior to the point at which the Sixth Amendment right to counsel attaches (e.g., electronic monitoring of a suspect's conversations with others), is prohibited." *Mitzel v. Tate*, 267 F.3d 524, 532 (6th Cir. 2001) (citing *Michigan v. Jackson*, 475 U.S. 625, 632 (1986)).

Here, the last recording occurred one month before defendant was indicted, at a time when the government's investigation was still ongoing and he was a suspect, not yet an "accused." Moreover, as noted above in *Cope*, the Sixth Amendment right to counsel is offense-specific. Defendant's relationship with attorney Rogers was limited to his ongoing civil insurance-related dispute with Grange and was unrelated to the criminal charges that were eventually filed against him. Defendant's argument is therefore without merit.

VI.

As his final issue, defendant asserts that the forfeiture ordered by the district court at the sentencing hearing is unenforceable and violates his Sixth Amendment rights because, although the forfeiture was an integral part of the indictment and was included as a separate count, the jury never made any factual findings in this regard and defendant did not waive his right to have the jury make this determination. Defendant argues that the enhancement of his sentence by imposing forfeiture, in the absence of jury findings and on the basis of judge-made findings, violates *Booker*, 543 U.S. 220. Because defendant did not raise this issue below, the plain error standard of review applies. *United States v. Hall*, 411 F.3d 651, 653 (6th Cir. 2005).

Defendant's argument is without merit. At the trial, after the jury returned their verdict on Counts One through Six, the jury was excused and counsel for the government stated,

> Your honor, there is a matter of the forfeiture counts, I believe, since there was a request to have the jury decide that. It would be up to you. I don't know if you want to do it now or perhaps save it until the sentencing hearing. I don't know if we have

to do it now or we can wait.  We would not present any more evidence other than what was already presented.

Defense counsel responded, "If the Court wants to take further evidence on that, I would request that it be done at the time of the sentencing hearing."  Government counsel had no objection to the deferral proposed by defense counsel, and the court thus ruled that the matter would be considered at sentencing.  It would appear from this exchange that defendant had no objection to the forfeiture issue being resolved at the time of sentencing.

In any event, as the government points out, the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection.  *Libretti v. United States*, 516 U.S. 29, 49 (1995).  *Booker* does not require a different result.  *Hall*, 411 F.3d at 655 ("The absence of a statutory maximum or any sort of guidelines system indicates that forfeiture amounts to a form of indeterminate sentencing, which has never presented a Sixth Amendment problem. . . .  [W]e fail to see how *Booker* requires us to turn over our prior precedent in this area ([*United States v*.] *Corrado*, [227 F.3d 543, 550 (6th Cir. 2000)]) or allows us to turn our back on the Supreme Court's prior ruling in this area (*Libretti*)."

The final order of forfeiture therefore did not violate defendant's Sixth Amendment right to a jury trial.

VII.

For the above reasons, we affirm defendant McAuliffe's convictions and sentences.