NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0058n.06

Case No. 21-3028

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 01, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| EDWARD KILLINGSWORTH, JR., | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant - Appellant. | ) | |
| | ) | |

BEFORE: COLE, GIBBONS, and LARSEN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Edward Killingsworth, Jr. was charged in a one-count indictment with Interstate Communication Threat, in violation of 18 U.S.C. § 875(c), for knowingly and willfully transmitting interstate communications threatening to kill any law enforcement officer. The charges were based on September 2019 Facebook posts stating "I think a cop needs killed around here again," and "[M]ore cops need shot dead. They kill us, we kill them simple." He filed a motion to dismiss the indictment, arguing it was legally insufficient and his statements were protected by the First Amendment. The district court denied his motion, holding that the indictment was sufficient and that whether Killingsworth's posts constituted "true threats" or protected political hyperbole was a factual determination for the jury. Killingsworth then pled guilty to the indictment and the court sentenced him to 30 months' imprisonment. Because the indictment was legally sufficient and the actual determination of whether Killingsworth intended the messages as threats is a factual determination for a jury, we affirm.

**I**

On September 17, 2019, a discussion was unfolding on the "Warren's Real Breaking News" Facebook page about the county prosecutor's decision to not charge two police officers in the January 2019 shooting death of Matthew Burroughs, an unarmed black man. In the comments section of the article, Killingsworth posted two statements: "I think a cop needs killed around here again," and "[M]ore cops need shot dead. They kill us, we kill them simple." DE 1, Indictment, Page ID 1; DE 17, Def.'s Mot. to Dismiss Indictment, Page ID 94–95. A municipal court employee took a screenshot of Killingsworth's comments and texted it to Detective John Greaver of the Warren Police Department. Greaver looked up Killingsworth in Ohio's law enforcement database and matched his Facebook profile picture to his driver's license photograph. A warrant was issued for Killingsworth's arrest for Aggravated Menacing and Telecommunication Harassment in violation of Warren, Ohio's Codified Ordinances. Immediately after the warrant was issued, Killingsworth's parole officer arranged to meet him at the Warren Police Station and advised him of the warrant. Greaver and another police officer placed Killingsworth under arrest on September 17, 2019.

On March 4, 2020, a federal grand jury indicted Mr. Killingsworth, charging him in a one-count indictment with Interstate Communication Threat, in violation of 18 U.S.C. § 875(c). The indictment stated:

> On or about September 17, 2019, in the Northern District of Ohio, Eastern Division, Defendant EDWARD KILLINGSWORTH JR. did knowingly and willfully transmit in interstate and foreign commerce from Warren, Ohio, communications which viewed together, threatened to kill any law enforcement officer, to wit: Facebook.com public postings, which included:
> a. On September 16, 2019, "I think a cop needs killed around here again."
> b. On September 17, 2019, "[M]ore cops need shot dead. They kill us, we kill them simple."

DE 1, Indictment, Page ID 1. Killingsworth pled not guilty and moved to dismiss the indictment, arguing the indictment was legally insufficient because his Facebook comments did not constitute threats, but rather "statements of opinion not subject to prosecution." DE 17, Def.'s Mot. to Dismiss Indictment, Page ID 98. He asserted his statements did not rise to the level of a "true threat" and were protected as political speech under the First Amendment. *Id.* at 101–02. The district court held a hearing on Killingsworth's Motion to Dismiss the Indictment and his contemporaneously filed Motion to Suppress, at which Detective Greaver testified that, in addition to the threats against law enforcement, Killingsworth posted "several other threats toward other people . . . ." DE 22, Hearing Transcript, Page ID 203. These comments, directed at other users on the Facebook thread, included: "Your kids need shot in front of you"; "F you and your kids, you son that prize"; "I'm going to F your wife first"; "Trust me I'll take one with me"; and "I'll see you in the woods." *Id.* at 206.

Following the hearing, the district court issued a Memorandum of Opinion and Order denying Killingsworth's Motion to Dismiss and Motion to Suppress.[1] The court held the indictment was legally sufficient because it provided "a precise recitation of the elements of the crime for which Killingsworth [was] charged along with a concise and definite statement of the facts supporting the charge against him . . . ." DE 24, Mem. Op. and Order, Page ID 254. The court further held that the indictment sufficiently alleged Killingsworth had the requisite mental state required for a violation of 18 U.S.C. § 875(c). *Id.* at 255–56. Finally, the court discussed Killingsworth's argument that his speech was protected by the First Amendment, holding that whether "Killingsworth subjectively intended his statements to be threatening or political

---

[1] The district court denied Killingsworth's Motion to Dismiss the Indictment and his Motion to Suppress, but he does not challenge the denial of the Motion to Suppress on appeal.

hyperbole is . . . clearly a factual disagreement, one in which this Court may not opine, analyze, or further discuss [because] factual issues remain the duty of the jury." *Id.* at 258. On September 9, 2020, Killingsworth pled guilty to the one-count indictment. The factual basis of the plea agreement mirrored the facts as set forth in the indictment, and Killingsworth reserved the right to appeal the district court's written judgment on his motion to dismiss the indictment.

The district court sentenced Killingsworth on December 21, 2020. With a total offense level of ten and a criminal history category of VI, his advisory guideline sentencing range was 24 to 30 months. The court discussed the 18 U.S.C. § 3553(a) factors and imposed a high-end guideline sentence of 30 months and 3 years of supervised release, citing Killingsworth's lack of remorse, criminal history, and past probation violations.

**II**

This court reviews the sufficiency of an indictment de novo. *United States v. DeZarn*, 157 F.3d 1042, 1046 (6th Cir. 1998). "An indictment is generally sufficient if it fully, directly, and expressly sets forth all the elements necessary to constitute the offense intended to be punished." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007) (internal quotation marks and citation omitted). To be sufficient, the indictment must (1) detail each element of the charged offense and give the defendant notice of the charges he faces, and (2) "be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." *Id.* (quoting *United States v. Douglas*, 398 F.3d 407, 413 (6th Cir. 2005)). The indictment must be read as a whole, with factual allegations accepted as true and construed in a practical sense with all the necessary implications. *United States v. Reed*, 77 F.3d 139, 140 n.1 (6th Cir. 1996) (en banc).

**III**

"Section 875(c) punishes the transmission in interstate commerce of 'any communication containing . . . any threat to injure the person of another.'" *United States v. Doggart*, 906 F.3d 506, 510 (6th Cir. 2018) (alteration in original) (quoting 18 U.S.C. § 875(c)). For someone to be convicted under this law, "the government must prove that: (1) the defendant sent a message in interstate commerce; (2) a reasonable observer would view the message as a threat; and (3) the defendant intended the message as a threat." *Id.*; *see also United States v. Howard*, 947 F.3d 936, 943 (6th Cir. 2020).

On appeal, Killingsworth asserts the indictment is legally deficient under 18 U.S.C § 875(c) because it failed to allege intent of communicating a true threat. He argues that pursuant to *Elonis v. United States*, 575 U.S. 723, 737 (2015), a defendant convicted under § 875(c) must know that he is transmitting a communication and that his communication contains a threat. Killingsworth contends his two Facebook statements "were not threats, did not contain any language construable as a serious expression of an intent imminently to carry out some injurious act, and lacked any expression of an intent to commit the injury." CA6 R. 21, Appellant Br., at 13.

We disagree. The indictment against Killingsworth fully, directly, and expressly sets forth each of the elements necessary to constitute an offense under § 875(c). The indictment provides specific dates for the offense and identifies Killingsworth as the defendant. The indictment tracks the statutory language, stating that Killingsworth "did knowingly and willfully transmit in interstate and foreign commerce from Warren, Ohio, communications . . . [that] threatened to kill any law enforcement officer." DE 1, Indictment, Page ID 1. The indictment then quotes two of Killingsworth's posts: (1) "I think a cop needs killed around here again," and (2) "[M]ore cops

need shot dead. They kill us, we kill them simple." *Id.* These allegations are sufficiently specific as to give Killingsworth notice of the charges and protect him against double jeopardy. *See McAuliffe*, 490 F.3d at 531.

Killingsworth maintains the indictment is nevertheless defective because its language does not allege that he *intended* to threaten law enforcement officers. He argues his posts are not threats, but rather are "statements of opinion not subject to prosecution." CA6 R. 21, Appellant Br., at 14. Killingsworth points to *Watts v. United States*, 394 U.S. 705 (1969), in which an 18-year-old stated at a public rally, during a discussion of police brutality, that

> They always holler at us to get an education. And now I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is [President Lyndon B. Johnson]. They are not going to make me kill my black brothers.

*Watts*, 394 U.S. at 706. In *Watts*, the Supreme Court held that, "[t]aken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners," the statement was not a true threat against the President's life and the conviction could not stand.[2] *Id.* at 708. Killingsworth argues his language, like the defendant's in *Watts*, is political hyperbole at a time of social unrest when the black community felt frustration with another unarmed black man dying at the hands of the police without consequences for the officers. He asserts that his language merely constituted a "vehement, caustic, and sometimes unpleasantly sharp attack[] on government and public officials." CA6 R. 21, Appellant Br., at 18 (citing *Watts*, 394 U.S. at 708).

Unlike the language in *Watts*, Killingsworth's statements lacked the word "if" and were not conditional. Moreover, Killingsworth's argument is contrary to Supreme Court and Sixth

---

[2] The defendant in *Watts* was convicted of violating a 1917 statute that prohibited "any person from knowingly and willfully making any threat to take the life of or to inflict bodily harm upon the President of the United States." 394 U.S. at 705 (internal quotation marks omitted).

Circuit precedent regarding an indictment's sufficiency in alleging a defendant's intent under § 875(c). His argument that his statements are expressions of political opinion, not threats, does not render the indictment legally insufficient. In *Elonis*, the Supreme Court explained "the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Elonis*, 575 U.S. at 740. The Sixth Circuit has held that "an indictment, when read in its entirety, can allege a defendant's intent element by way of descriptions of defendant's actions—all of which can imply defendant's requisite mental state for every element of the crime." *Howard*, 947 F.3d at 944.

The government bears the burden at trial of proving that a threat is a "true threat." *See Howard*, 947 F.3d at 947. At the indictment stage, however, the government's obligation is simply to directly set forth each element necessary to constitute the offense intended to be punished. *Hamling v. United States*, 418 U.S. 87, 117 (1974). Here, the indictment specifically alleges Killingsworth knowingly and willfully transmitted a communication threatening to kill police officers, and this is sufficient. A reasonable reader of the indictment could conclude that Killingsworth "willfully and knowingly" transmitted the Facebook posts listed in the indictment "for the purpose of issuing a threat, or with the knowledge that the [posts would] be viewed as a threat." *Elonis*, 575 U.S. at 740. Accordingly, the indictment against Killingsworth sufficiently contains each element necessary to constitute an offense under 18 U.S.C § 875(c), including the intent requirement.

Killingsworth next argues the indictment should have been dismissed because it violated his right to free speech under the First Amendment. He acknowledges the First Amendment does not protect "true threats," but argues the district court erred in holding that whether his statements

constitute true threats is a factual issue properly determined by the jury. Killingsworth asserts the posts underlying the indictment were "impulsive statements of political alienation which are protected by the First Amendment." CA6 R. 21, Appellant Br., at 21. He argues that when underlying "facts are found that establish the violation of a statute, the protection against conviction afforded by the First Amendment is a matter of law" requiring judicial determination. CA6 R. 21, Appellant Br., at 20 (quoting *Dennis v. United States*, 341 U.S. 494, 513 (1951)). But, unlike in *Dennis*, no factfinder had yet made any factual determinations in Killingsworth's case.

The district court noted the parties submitted arguments about whether Killingsworth's statements were true threats or were political hyperbole protected by the First Amendment, but it did not fully address the arguments, holding that Killingsworth's intent behind the statements was a "factual disagreement." DE 24, Mem. Op. and Order, Page ID 258. The court stated that it could not "opine, analyze, or further discuss" whether the statements constituted true threats because "factual issues remain the duty of the jury." *Id.* The district court held that, regardless of whether Killingsworth's Facebook posts constituted true threats, the indictment was legally sufficient because it alleged the speech was a threat in violation of 18 U.S.C. § 875(c) and alleged Killingsworth possessed the requisite intent that the speech be threatening.

It is true that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *Greene v. Barber*, 310 F.3d 889, 896 (6th Cir. 2002) (quoting *Houston v. Hill*, 482 U.S. 451, 461 (1986)). However, the First Amendment does not protect "true threats," a category that includes "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). In *Elonis*, the Supreme Court recognized that "to be a true threat, the defendant must subjectively intend his

communication to be threatening." *Doggart*, 906 F.3d at 512 (citing *Elonis*, 575 U.S. at 737–38). Here, Killingsworth's intent in sending these messages is subject to multiple interpretations, as illustrated by the parties' arguments: Killingsworth submits that his statements, in the context of police brutality against the black community, constitute expressions of political frustration. The government argues his statements are not political hyperbole, but an authentic threat of violence against police officers.

The district court correctly concluded that, at the juncture of a motion to dismiss the indictment, determining Killingsworth's subjective intent behind his communications was a question of fact for the jury to determine. Killingsworth argues this is not a factual determination because whether his posts are protected by the First Amendment is a matter of law because they provide the basis for the violation of 18 U.S.C § 875(c). But, as discussed above, when a district court assesses the sufficiency of an indictment, it "accept[s] the factual allegations as true." *McAuliffe*, 490 F.3d at 531. The government would have been required to prove Killingsworth's specific intent to threaten to the jury, who would have made the factual determination. At this stage, the district court's analysis correctly focused on the legal sufficiency of the indictment and properly concluded that because the indictment alleged Killingsworth's speech was a threat in violation of 18 U.S.C. § 875(c) and alleged he possessed the requisite subjective intent that the speech be threatening, dismissal was not warranted.

**IV**

The indictment tracked the language of 18 U.S.C § 875(c) and alleged Edward Killingsworth intended his messages as a threat. It detailed each element of the charged offense and was sufficiently specific to enable Killingsworth to plead double jeopardy in a subsequent proceeding. The actual determination of whether he intended the message as a threat is a factual

determination for a jury. Therefore, the district court properly denied Killingsworth's motion to dismiss the indictment. We affirm.