*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

　　　　　　　*Plaintiff-Appellee,*

　　　*v.*

JOYCE C. "JOY" HALL,

　　　　　　　*Defendant-Appellant.*

No. 04-5047

>

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 01-00004—Robert L. Echols, Chief District Judge.

Submitted: April 28, 2005

Decided and Filed: May 6, 2005[*]

Before: COLE and SUTTON, Circuit Judges; BARZILAY, Judge.[**]

---

### COUNSEL

---

**ON BRIEF:** Joseph F. Edwards, EDWARDS & EDWARDS, Cookeville, Tennessee, for Appellant. William Cohen, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

---

### OPINION

---

SUTTON, Circuit Judge. On July 22, 2003, a jury convicted Joy Hall of 23 counts of bank fraud and money laundering. The district court sentenced Hall to a 70-month prison term, ordered her to pay $571,496.81 in restitution and ordered her to forfeit $686,202.17 in illegal proceeds. Hall challenges her prison sentence and forfeiture order on Sixth Amendment grounds. We vacate her sentence of imprisonment and remand for resentencing, but uphold the forfeiture order.

---

[*] This decision was originally issued as an "unpublished decision" filed on May 6, 2005. On May 31, 2005, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Judith M. Barzilay, Judge for the United States Court of International Trade, sitting by designation.

1

I.

In a conspiracy spanning seven years (1993–2000), Hall and her co-defendant Jimmy Lee Birdwell, a Vice President and loan officer of Citizens Bank of Gainsboro, submitted numerous false loan applications to Citizens Bank. Others joined the conspiracy, and together Hall and her co-defendants agreed to buy, sell and transfer real property with the intent to defraud the bank. In furtherance of the conspiracy, the defendants (1) forged property appraisals to inflate the value of property used as collateral for loans, (2) concealed the names of the true property owners and placed the property in the names of different individuals without their consent, (3) inflated the value of assets and earnest money that individuals presented on their loan applications and (4) advised individuals seeking loans from the bank how to inflate the value of their assets and to falsify their loan applications to ensure approval.

On October 22, 2001, police arrested Hall, and on July 22, 2003, a jury found her guilty of 23 counts of bank fraud and money laundering. The government estimated the amount of criminal forfeiture to be $686,202.17, and the jury agreed, finding "by a preponderance of the evidence that the amount of $686,202.17 constitutes or is derived from proceeds obtained directly or indirectly, as a result of the bank fraud." JA 136.

On October 20, 2003, the district court sentenced Hall. Relying heavily on the presentence report and applying the Guidelines by their then-mandatory terms, the district court calculated Hall's sentence as follows. In accordance with § 2B1.1(a)(2) of the Guidelines, which concerns offenses involving fraud and deceit, the court started with a base offense level of 6. Moving to the specific offense characteristics, it added 14 levels because the estimated loss to the bank from the offense was greater than $400,000 but less than $1,000,000. *See* U.S.S.G. § 2B1.1(b)(1)(H). On top of this adjustment, the court added three additional enhancements: a two-level enhancement because Hall was convicted under 18 U.S.C. § 1956 (laundering of monetary instruments), *see* U.S.S.G. § 2S1.1(b)(2)(B); a three-level enhancement for Hall's role as a manager or supervisor in the offense, *see* U.S.S.G. § 3B1.1(b); and a two-level enhancement for obstruction of justice due to a finding that she committed perjury during her trial testimony, *see* U.S.S.G. § 3C1.1. All told, these adjustments gave Hall an offense level of 27, and when coupled with a Criminal History Category of I, it generated a sentencing range of 70 to 87 months. The district court sentenced Hall to the low end of the range (70 months) and ordered her to make restitution in the amount of $571,496.81 and to forfeit the $686,202.71 that the jury found to be the proceeds from her illegal activity. At sentencing, Hall objected to the district court's loss determination and its application of the enhancement provisions but did not register any constitutional objections to her sentence.

II.

Hall first challenges her prison sentence, claiming that it violates her rights under the Sixth Amendment as interpreted in *United States v. Booker*, 125 S. Ct. 738 (2005). Because Hall did not raise a Sixth Amendment challenge below, she may obtain relief on appeal only if she satisfies the requirements of the plain-error test. *See United States v. Olano*, 507 U.S. 725, 731 (1993); *see also* Fed. R. Crim. P. 52(b). Under the plain-error test, we may vacate Hall's sentence if there was an "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (quotations and citations omitted).

In the aftermath of *United States v. Oliver*, 397 F.3d 369 (6th Cir. 2005), which applies the plain-error test to core *Booker* claims arising from increased sentences premised on fact findings made by the district court, there can be little doubt that Hall may raise a Sixth Amendment challenge to her sentence. *Cf. United States v. Barnett*, 398 F.3d 516 (6th Cir. 2005). The district court gave

Hall the lowest possible sentence of imprisonment and expressed some reservations even about that in view of her age (61) and poor mental health. But for its belief that the Guidelines were mandatory, it is well within the realm of possibility that the district court would have imposed a sentence below the sentencing range called for by the Guidelines—which is all that *Oliver* and *Barnett* require. *See Oliver*, 397 F.3d at 380; *Barnett*, 398 F.3d at 528; *see also United States v. Gonzales*, No. 03-4279, 2005 U.S. App. LEXIS 3154, at *6 (6th Cir. Feb. 22, 2005) (noting that the inference that a district court might impose a lesser sentence under non-mandatory guidelines is "particularly strong" where the district court "sentenced the defendant at the bottom of the Guideline range").

### III.

Hall next argues briefly that the prosecution violated her Sixth Amendment rights because the jury imposed a criminal forfeiture against her on the basis of the preponderance-of-the-evidence standard rather than the beyond-a-reasonable-doubt standard. In a four-sentence argument bereft of any case citations, Hall maintains that "since forfeiture is punishment, the verdict violated the defendant's right to have the charge decided by a jury beyond a reasonable doubt." Hall Br. at 13. We disagree, and so has the United States Supreme Court.

In *Libretti v. United States*, 516 U.S. 29 (1995), the defendant argued that he enjoyed a constitutional right to have a jury decide the extent of his criminal forfeiture. In rejecting the argument, the Court explained that "the right to a jury verdict on forfeitability does not fall within the Sixth Amendment's constitutional protection" because criminal forfeiture concerns sentencing, not the elements of a crime. *Id*. at 49. The Court disagreed with Libretti's characterization of forfeiture as a "hybrid that shares elements of both a substantive charge and a punishment imposed for criminal activity," *id.* at 40, and refused to put the forfeitability determination on a par with a jury determination of guilt or innocence, holding that any right to a "jury determination of forfeitability is merely statutory in origin," *id.* at 49; *see* Fed. R. Crim. P. 32.2(b)(4) (2004) (current rule requiring jury determination as to whether the "government has established the requisite nexus between the property and the offense committed by the defendant" upon the request of either party); Fed. R. Crim. P. 31(e) (1995) (former rule requiring special verdict by jury ascertaining the extent of a forfeiture).

In the aftermath of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), we were asked to consider whether the Sixth Amendment as interpreted in *Libretti* still permitted courts to make criminal forfeiture decisions using a preponderance standard. In *United States v. Corrado*, 227 F.3d 543 (6th Cir. 2000), we rejected the argument that "the jury must decide the extent of forfeiture or that the district court, as the agreed trier of fact, must make factual determinations based on the 'beyond a reasonable doubt' standard," 227 F.3d at 551, reasoning that *Apprendi* did not affect *Libretti*'s holding that criminal forfeitures are part of the sentence alone and as such "[t]here is no requirement under *Apprendi* . . . that the jury pass upon the extent of a forfeiture," *id.* at 550. To our knowledge, every other circuit to consider the issue after *Apprendi* has reached the same conclusion. *See United States v. Keene*, 341 F.3d 78, 86 (1st Cir. 2003); *United States v. Gasanova*, 332 F.3d 297, 301 (5th Cir. 2003); *United States v. Shyrock*, 342 F.3d 948, 991 (9th Cir. 2003); *United States v. Najjar*, 300 F.3d 466, 485–86 (4th Cir. 2002); *United States v. Vera*, 278 F.3d 672, 673 (7th Cir. 2002); *United States v. Cabeza*, 258 F.3d 1256, 1257 (11th Cir. 2001) (per curiam).

Nor do we see anything in *Booker*, which extended *Apprendi* to the Sentencing Guidelines, that alters this conclusion. The Guidelines do not address forfeiture at all except to say that "[f]orfeiture is to be imposed upon a criminal defendant as provided by statute." *See* U.S.S.G. § 5E1.4. And while *Booker* (and *Blakely v. Washington*, 124 S. Ct. 2531 (2004), before that) redefined what constitutes a statutory maximum for Sixth Amendment purposes, the forfeiture statute at issue in this case (and, we suspect, most forfeiture statutes) does not contain a statutory

maximum. It instead says that a court shall order the defendant to forfeit "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." 18 U.S.C. § 982(a)(2); *see Vera*, 278 F.3d at 673 ("Determining the forfeitable proceeds of an offense does not come within *Apprendi*'*s* rule, because there is no 'prescribed statutory maximum' and no risk that the defendant has been convicted *de facto* of a more serious offense."). The absence of a statutory maximum or any sort of guidelines system indicates that forfeiture amounts to a form of indeterminate sentencing, which has never presented a Sixth Amendment problem. Like the Seventh Circuit, we fail to see how *Booker* requires us to overturn our prior precedent in this area (*Corrado*) or allows us to turn our back on the Supreme Court's prior ruling in this area (*Libretti*). *See United States v. Tedder*, 403 F.3d 836, 840–41 (7th Cir. 2005) (holding post-*Booker* that the Sixth Amendment does not apply to forfeitures). Hall's effort to extend *Apprendi* and *Booker* to criminal forfeitures, accordingly, is rejected.

IV.

For these reasons, we affirm the judgment except with regard to Hall's term of imprisonment, which we remand to the district court for resentencing.