**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0834n.06
Filed: December 10, 2007

**07-5021**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MARCUS MCGUIRE, | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and COOK, Circuit Judges; VINSON,[*] District Judge.

**PER CURIAM.** The defendant, Marcus McGuire, pleaded guilty to charges of

possessing with intent to distribute five grams or more of cocaine base and of being a felon

in possession of a firearm, at the same time reserving the right to contest the

constitutionality of a search that uncovered the evidence on which those charges rested.

On appeal, McGuire now asserts that the incriminating evidence should have been

suppressed because the arresting officer had no justification for the initial seizure of the

defendant and his vehicle. Despite some question about the consensual nature of the

---

[*]The Hon. C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

defendant's initial interaction with the arresting officer, we conclude that the officer had "a reasonable and articulable suspicion" that McGuire was involved in criminal activity so as to justify the brief investigatory stop that led to the establishment of probable cause to search his car. We therefore affirm the judgment of the district court, although on grounds different from those set out in the district judge's order denying the defendant's motion to suppress.

## FACTUAL AND PROCEDURAL BACKGROUND

Shortly before 1:00 a.m. on July 3, 2005, police officer Brian Capps was on routine patrol in a rural, residential area of Kenton County, Kentucky. At that time, Capps observed a black Chevrolet Cavalier parked at the very end of a driveway that led up a long hill to a home. Noticing that two individuals were sitting in the Cavalier and that the parked vehicle did not have its headlights on or appear to have its engine running, Capps stopped his patrol car immediately behind the Cavalier. In fact, when asked whether he "pulled up behind the vehicle . . . so there's no way that that vehicle could leave," Capps replied, "Probably pretty close. I mean, I can't remember exactly how I parked, but yes. I was perpendicular, I guess, to their car."

According to Capps, he found the presence of the Cavalier in the driveway suspicious. As the officer explained:

> We take a lot of burglary reports in the south end of the county because it's
> so rural. People like to break in houses. Time of night, the vehicle had no
> lights on. That was very suspicious. Usually, if you're going to get ready to
> go up your driveway, you would have your lights on. Just years of
> experience, normally people don't sit at the bottom of their driveway with their
> lights out.

Consequently, he approached the vehicle and tapped on the driver's window. When the driver, later identified as the defendant, "either rolled the window down or opened the door to converse with" Capps, the officer detected "a faint odor of marijuana coming from inside the vehicle."

Capps then asked McGuire for his driver's license or other form of identification but was provided none. Similarly, the 15-year-old female passenger in the car was unable to produce identification that would readily have revealed her age to the officer. After ascertaining McGuire's name, date of birth, and Social Security number, Capps returned to his patrol car and ran a computer check to determine whether any warrants for McGuire's arrest were outstanding. When the check revealed no such outstanding warrants, Capps returned to the car to converse again with the defendant.

At that time, the officer again smelled the odor of burnt marijuana coming from the defendant's car and asked McGuire to exit his vehicle. Although a subsequent pat-down of the defendant did not yield any weapons or contraband, the teenaged passenger admitted to Capps that she and McGuire had indeed smoked marijuana together approximately one hour prior to their confrontation with the officer. Based upon that

information, Capps then conducted a search of the Cavalier and found a plastic baggie of marijuana and two plastic baggies of crack cocaine in the center console compartment. McGuire was placed under arrest, and a further search of the trunk of the defendant's vehicle yielded "a HiPoint .9 millimeter pistol." Capps estimated that the total time elapsed between the time he first tapped on McGuire's window until he placed the defendant under arrest was "about 12 minutes."

A federal grand jury eventually returned an indictment against McGuire, charging him with possession with intent to distribute five grams or more of cocaine base (count 1) and with knowingly possessing a firearm after having been convicted of a felony (count 2). An additional count in the charging instrument sought the forfeiture of the "HiPoint, Model C9, 9 millimeter, semiautomatic pistol, serial number P148204."

McGuire filed a suppression motion with the district court, arguing that the warrantless seizure of his person and the subsequent search of his vehicle were unjustified. The district court disagreed, concluding that McGuire was not "seized" by Officer Capps until after the law enforcement official smelled marijuana in the defendant's car and thus possessed probable cause for a warrantless search. Consequently, ruled the court, no Fourth Amendment rights were violated, and McGuire's suppression motion was without merit. The defendant's motion for reconsideration was similarly unsuccessful and McGuire chose to enter conditional guilty pleas to the first two counts of the indictment.

The district court accepted those pleas, adjudged the defendant guilty, and sentenced him

to an effective prison term of 70 months, in addition to three years of supervised release.

## DISCUSSION

McGuire contends that Capps's initial contact with him during the early morning

hours of July 3, 2005, was tantamount to a warrantless seizure of his person that should

have rendered any incriminating evidence recovered from the defendant's vehicle

inadmissible in subsequent court proceedings.  In analyzing such an argument, we have

previously explained:

> Typically, three levels of encounters between police and citizens are challenged in the courts:  (1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause.
>
> Investigative detentions and arrests are considered "seizures" and thus must be conducted consistent with . . . Fourth Amendment principles . . . .  The consensual encounter, however, is not a seizure and hence not governed by the Fourth Amendment, as long as [an] officer's actions do not convert it into an investigative detention.

*United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997) (citations omitted).

In reviewing the district court's determination that the officer's interaction with

McGuire initially constituted only a consensual encounter and thus did not implicate Fourth

Amendment protections, we are mindful that, as the United States Supreme Court has

noted, "[t]he purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)). Thus, the federal courts will consider a person to have been "seized" for Fourth Amendment purposes "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 554.

The government argues in this appeal that Capps's confrontation with McGuire must be considered a consensual encounter because not *all* of the coercive aspects present in cases in which courts have rebuffed efforts to label incidents as "consensual" are present here. We find this argument unpersuasive. Although the Supreme Court did list in *Mendenhall* "[e]xamples of circumstances that might indicate a seizure," circumstances such as the presence of multiple officers, physical touching, display of a weapon, and use of language or tone indicating the necessity of compliance, *see id.*, the Supreme Court and other federal courts have never required the presence of all such "examples" to convert an innocent encounter into a Fourth Amendment seizure. Indeed, the touchstone of any inquiry into the validity of a warrantless detention of an individual continues to be simply whether "the person to whom questions are put remains free to disregard the questions and walk away." *Id.*

In light of all the circumstances presented during the suppression hearing testimony, we find it unlikely that a reasonable person parked at the end of a private driveway at one o'clock in the morning would have felt free to leave the scene after a police car pulled to a stop so close that "there's no way that that vehicle could leave." But even if the district court erred in concluding that the initial interaction between Officer Capps and the defendant could be considered a consensual encounter, that determination would not necessarily require suppression of the evidence seized from McGuire's vehicle *if* the stop could be justified as an investigative detention.

It is, of course, well-established that Fourth Amendment "protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). Nevertheless, in such instances, a standard less stringent than probable cause for a detention is applicable. Indeed, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). In determining the validity of an investigative stop, a reviewing court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Id.* (citation omitted). Furthermore, "[a]lthough an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of

satisfying a preponderance of the evidence standard." *Id.* at 273-74 (citations and internal quotation marks omitted).

In this case, there is little doubt that Officer Capps had not only articulable, but also reasonable, suspicions that McGuire might have been engaged in criminal activity. At 1:00 a.m., while patrolling in a rural area of the county that had experienced a number of recent burglaries, Capps noticed two people sitting in a vehicle that had its headlights and engine turned off and that was parked at the very end of a long driveway to a private residence. As the officer testified during the suppression hearing, his experiences indicated that there was little innocent justification for such a situation and that "normally people don't sit at the bottom of their driveway with their lights out." However, even when there are also innocent explanations for the various factors considered by law enforcement officials in suspecting that criminal activity "may be afoot," those factors, taken together, may still give rise to the reasonable suspicion necessary to justify a brief, investigatory detention. *See United States v. Marxen*, 410 F.3d 326, 329 (6th Cir. 2005) (citing *Arvizu*, 534 U.S. at 274-75), *cert. denied*, 546 U.S. 1220 (2006).

Given the totality of the circumstances in this case, we conclude that it was reasonable for Capps to suspect that some criminal activity might well be in progress. The officer was, therefore, justified in briefly detaining the occupants of the parked car to determine their intentions. Once Capps approached the car and began conversing with McGuire, moreover, he detected the odor of burnt marijuana, a finding that, in conjunction

with other information learned by Capps at the scene, justified the further intrusions that resulted in the uncovering of evidence of wrongdoing. Hence, there was no Fourth Amendment violation in this case, and the defendant's suppression motion was properly denied by the district court.

## CONCLUSION

For the reasons set out above, we AFFIRM the judgment of the district court.