**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0710n.06
Filed: November 19, 2008

**No. 07-3394**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | On Appeal from the United |
| | ) | States District Court for the |
| ROBERT HORNE, | ) | Southern District of Ohio |
| | ) | |
| Defendant-Appellant. | ) | |

Before: **BOGGS, Chief Judge, and MERRITT and GRIFFIN, Circuit Judges.**

**PER CURIAM.** Defendant-Appellant Robert Horne appeals from the district court's denial of his motion to suppress the evidence underlying his plea of guilty to possession of a firearm in furtherance of a drug trafficking offense. Horne also appeals the denial of his motion to withdraw his guilty plea and the imposed sentence of 262 months. We hold that police officers lawfully approached Horne and searched him pursuant to his consent, and that moreover, they had reasonable suspicion to justify a *Terry* stop and frisk. We also hold that Horne's plea was knowing and intelligent, and that the sentence imposed by the district court was reasonable. Therefore, we affirm.

**I**

**A**

Horne was arrested on October 2, 2005 by Cincinnati Police Officers Thomas Weigand and Eric Schaible. The government's and Horne's accounts of events leading up to the arrest of Horne differ significantly. According to Officer Weigand, on October 2, 2005, he and his partner Schaible were patrolling their assigned neighborhood, which Weigand characterized as a high-crime area, where drug trafficking and violent crime are common. Shortly after 1:00 am, the officers approached an apartment building located at 3501 Burnet Avenue, which was familiar to the officers because of "high activity in drug sales and drug usage" and the numerous arrests made in the building for drug- and gun-related offenses. The building had "No Trespassing" signs posted on it, and the owner of 3501 Burnet had requested in writing that the Cincinnati Police help enforce criminal trespass laws on his property.

The officers observed a group of people standing in the breezeway of 3501 Burnet, an "area located at the entrance of the apartment building at 3501 Burnet Avenue with a step down onto the sidewalk." Weigand opened the window of his car and called out to the group that they needed to move on if they did not live in the building. While two people stepped away, Weigand saw Horne "duck[] behind one of the girls" who remained standing. Weigand interpreted Horne's movement as a suspicious "attempt to conceal his person," and decided to investigate: he approached Horne and asked whether Horne lived there, to which Horne replied that he did not. Weigand then asked whether Horne had "anything" on him, to which the latter replied, "No, you can check." Weigand proceeded to pat down Horne, but when the officer's hands approached Horne's waist, Horne suddenly collapsed to the ground. Officer Schaible helped Weigand to stand Horne up, but Horne kept his knees bent. Weigand continued the search and felt a hard metal object in Horne's waistband

that he thought was a gun.  Weigand handcuffed Horne, and removed the gun, a .38-caliber Charter Arms revolver with five live rounds, and another live round he found in Horne's left pants pocket. Horne was read his *Miranda* rights and transported to the police vehicle.  In a videotaped exchange inside the car, the officers questioned Horne about the gun.  Horne said he bought it on the street for $40 for protection.  During a search incident to Horne's booking, separate amounts of cocaine base were found in his right sleeve shirt pocket and his shoe.  On cross-examination, Weigand stated that when he asked the group outside 3501 Burnet if they lived there, "[n]obody answered," that he did not know whether any of the individuals were trespassing, and that he did not ask anyone for identification.

Horne's version of event differed from Weigand's.  According to Horne, he was standing with his girlfriend or ex-girlfriend, Tisha Bradley, outside the building, in which he lived.  He claimed that the address of the building was *3101* Burnet, that Bradley lived in Apartment 8, and that his name was on the lease.  Horne explained that he was outside the building because he was waiting for a pizza delivery with Tisha Bradley, and they remained outside after the delivery because Horne was waiting for a "ride" to take him to his mother's house.  When a Cincinnati Police cruiser pulled up, Officer Weigand left the vehicle, came up to Horne directly and placed him in handcuffs.  Horne testified that Weigand did not ask or say anything.  Horne denied that he tried to hide behind another person and he denied consenting to the search or doubling over during the search.  He could not recall that he was given his *Miranda* rights or that he made any statements regarding his firearm.

On cross-examination,  Horne restated that he was living at 3101 Burnet Avenue, Apartment 8, and that his name "is on the paperwork."  When the court pointed out that the address of the

building in front of which the arrest took place was 3501, Horne stated that he meant 3501. When the government indicated that Bradley is listed as a resident at 3501 Burnet, *Apartment 17*, and that Horne's name is not on the tenant list, Horne seemed to indicate that Bradley was living in that apartment before the two "got together," and that his name is on the paperwork for Apartment 8. When asked why he went downstairs to receive his pizza with a gun and crack cocaine on his person, Horne responded that the gun was for protection, and that he "did not take no crack down with [him] to get no pizza." He further explained that he was waiting for a ride to take the pizza to his mother, who worked a late shift. Horne claimed that he did not remember making any statements to the police about his gun and stated that "didn't get the gun for no $40." He remembered the conversation however, when confronted with a videotape of his statement about the gun.

**B**

On December 3, 2003, Horne was charged with: Count 1, Possession with the Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §841(a)(1) and §841(b)(1)(C); Count 2, Possession of a Firearm as a Convicted Felon, in violation of 18 U.S.C. §922(g)(1); and Count 3, Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. §924(c)(1). Horne filed a motion to suppress evidence, which was denied on April 5, 2006, after a hearing on April 4, 2006. On April 11, 2006, Horne entered a conditional guilty plea to Count 3 of the Indictment, retaining his right to appeal the denial of the motion to suppress. Horne filed a pro se motion to withdraw guilty plea on June 28, 2006, which he withdrew after a hearing on July 26. Horne filed a second motion to withdraw guilty plea on January 5, 2007, which was denied on January 10. A third motion to withdraw was denied at the sentencing hearing. On March 27, 2007,

Horne was sentenced to a 262-month term of imprisonment followed by five years of supervised release.

**II**

When we review a district court's suppression determination, "we review findings of fact for clear error, and legal conclusions de novo." *United States v. Moon*, 513 F.3d 527, 536 (6th Cir. 2008). "When considering the denial of a suppression motion, we must view the evidence in the light most favorable to the government." *United States v. Montgomery*, 377 F.3d 582, 585 (6th Cir. 2004).

In his appeal, Horne argues that officers did not have reasonable suspicion to stop and search him. As the district court points out, there are three kinds of encounters that can occur between the police and citizens: consensual encounters, investigative *Terry* stops, and arrests. If Horne had voluntarily consented to the search, "we need not inquire whether the officers had reasonable suspicion." *United States v. Barefield*, 49 F. App'x 497, 500 (6th Cir. 2002) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). While in his testimony Horne denied consenting to the search, the district court appraised the witnesses' credibility and credited Officer Weigand's version of events as true. The district court determined that the consent was voluntary, as Horne "entered no credible evidence into the record showing that he was coerced to permit" the search of his person. In view of the numerous incongruities in Horne's testimony, the district court's conclusion is reasonable. As the Supreme Court unambiguously stated, "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not

internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

Moreover, the officers did have reasonable suspicion to support a *Terry* stop. Under *Terry v. Ohio*, 392 U.S. 1 (1968), a brief detention to investigate suspicious circumstances is warranted if "a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity." *United States v. Foster*, 376 F.3d 577, 584-85 (6th Cir. 2004) (citations omitted). "An investigative detention is permissible when it is based upon 'specific and articulable facts which, taken together with rational inferences from those facts,' give rise to a reasonable suspicion that the individual is, was, or is about to be engaged in criminal activity . . . . In reviewing a challenged investigative stop, 'the totality of the circumstances – the whole picture – must be taken into account.'" *Id*. at 585 (citations omitted in original) (quoting *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000)).

The officers had reasonable suspicion to justify a *Terry* stop on the basis of several "specific and articulable facts," which the district court identifies. First, "the area is a hot spot for drug and gun activity" – so much so that the owner of 3501 Burnet Avenue requested in writing that the police assist in enforcing criminal trespassing laws on his property. Second, it was late at night. Third, Horne "acted strangely by ducking behind one of the females in the breezeway." Under the totality of the circumstances standard, "[e]ven if each specific fact relied upon by the authorities to make a *Terry* stop would not be a basis for suspicion when considered in isolation, the reasonable suspicion necessary to support an investigatory stop can still be found when it is based upon an assessment of *all* circumstances surrounding the actions of a suspected wrongdoer . . . ." *United States v. Garza*,

10 F.3d 1241, 1245 (6th Cir. 1993) (internal quotation marks omitted). We have found reasonable suspicion in factually similar cases. *See, e.g., United States v. Finley*, 239 F. App'x 248, 252 (6th Cir. 2007) (finding reasonable suspicion on the basis of the crime-ridden character of the area, another officer's report of males loitering in inclement weather, and suspicious behavior of two men in a parked car, who slumped down in their seats to avoid being seen); *United States v. McGuire*, 258 F. App'x 749 (6th Cir. 2007) (per curiam) (finding reasonable suspicion on the basis of the lateness of the hour, a recent series of crimes in the area, and the suspects' sitting in a vehicle with the headlights and engine turned off at the end of a long driveway to a private residence). Accordingly, even if Horne did not consent, officers had reasonable suspicion to investigate and, in view of the place, time, and behavior of the suspect, Weigand was not unreasonable in conducting a pat-down.

### III

As the issue was raised at trial level, we review the denial of the defendant's motion to withdraw his guilty plea de novo. *United States v. Beverly*, 369 F.3d 516, 536 (6th Cir. 2004).

Horne has filed three motions to withdraw his guilty plea, all of which rested chiefly on the claim that Horne was misinformed by counsel with regard to the sentence he would be facing as a consequence of so pleading. In particular, Horne's first counsel informed Horne that he was facing a sentencing range of twelve to fifteen years. However, after the Presentence Investigation Report (PSI) was prepared, it became evident that as a result of Horne's career offender status, he faced a term of imprisonment ranging from 360 months to life.

It is well settled that "[a] guilty plea is valid only if the defendant knowingly, intelligently and voluntarily waives the many constitutional rights associated with a criminal trial . . . and has 'sufficient awareness of the relevant circumstances and likely consequences' of the plea." *United States v. Taylor*, 281 F. App'x 467 (6th Cir. 2008) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *Brady v. United States*, 397 U.S. 742, 748 (1970)).

We have previously considered situations, in which defendants sought to withdraw guilty pleas on the grounds of ignorance with regard to the likely sentence. In *United States v. Contreras-Armendariz*, we rejected a similar claim that the defendant's guilty plea was not knowing or voluntary because he mistakenly believed his criminal history category was lower than it was ultimately determined to be. 207 F. App'x 594, 596-97 (6th Cir. 2006). The plea was knowing and intelligent because the district court "reviewed the rights that Contreras was waiving, the factual and legal nature of the offenses with which he was charged, and the potential sentences he faced as a result of the guilty plea," and because Contreras presented "no factual basis upon which to dispute the probation officer's final calculation" of his criminal history category. *Id.* at 596.

In *United States v. Hodge*, we considered a challenge to the denial of a motion to withdraw, based on the district court's failure to advise defendant at the plea hearing of the amount of monetary loss to be used to calculate his offense level under the Guidelines. 259 F.3d 549 (6th Cir. 2001). Hodge argued that this failure rendered his plea not knowing or intelligent. In affirming, we made clear that "the district court need not identify a particular sentencing range under the Guidelines when accepting a guilty plea as long as the defendant is made aware of the maximum potential sentence" and the fact that the district court could exercise its discretion in imposing a sentence

under the statutory maximum  (and, at the time, within the sentencing range of the Guidelines).  *Id.* at 553-54 (citation omitted).  Although Hodge's claim hinged on an alleged failure of the court to comply with Federal Rule 11 during the colloquy while Horne attributes his mistaken belief to his counsel, the same level of awareness is necessary and sufficient to make a plea knowing and intelligent in either situation.

Horne was made aware of the same factors that were decisive in determining that the pleas in *Contreras-Armendariz* and *Hodge* were knowing and intelligent.  The plea agreement correctly informed Horne about the maximum potential sentence and the mandatory minimum. It did not guarantee Horne any particular sentence, stating only that the offense to which Horne is pleading guilty "carries a maximum penalty of up to life imprisonment with a mandatory minimum term of imprisonment of five (5) years . . . ."  The plea agreement also stated that the Guidelines were advisory and not binding on the court.  Finally, the plea agreement stated: "[S]entencing guideline stipulations and recommendations set forth . . . do not include any matters regarding [defendant's] criminal history category which will be determined by the Court after a pre-sentence investigation. The defendant fully understands that after investigation and review, the Court may determine that the offense factors and recommendations as outlined previously are not appropriate and is not obligated to accept such.  In that event, the defendant fully understands that he shall not have the right to withdraw his guilty plea."

Any mistaken belief Horne may have harbored as a result of misleading information from his counsel at the time of entering the plea was remedied at the plea colloquy.  During the plea colloquy, the district court clearly informed Horne of the conditions and consequences of his plea.

The court informed Horne about the maximum potential penalty of life imprisonment, the mandatory minimum penalty of five years, and that the court must impose the mandatory minimum and may impose the maximum penalty; the court asked for Horne's confirmation of understanding of every piece of information communicated. The court further ensured that Horne understood that the Guidelines created a range within which the court could exercise discretion, that the Guidelines are "not mandatory but strictly advisory," and that crucially, "the Court will not be able to determine which guideline applies in [Horne's] case until after a presentence report is completed and both [Horne] and the government have had an opportunity to challenge the facts as reported by the probation officer." Horne specifically confirmed his understanding of each of these statements. The court further ensured that Horne was not under the influence of alcohol or narcotics, that he was otherwise clearheaded and in "full possession of his faculties," and that he understood the nature and consequences of his plea.

Although Horne's counsel initially misinformed Horne about the likely sentencing range, both the plea agreement and the plea colloquy adequately informed Horne about all the operative factors regarding his possible sentence. As in *Contreras-Armendariz*, Horne offers no factual basis to justify his mistaken belief with regard to his criminal history. Therefore, the denial of the motion to withdraw the guilty plea was proper.

## IV

We review the reasonableness of the sentence for plain error, because this issue was not raised below. *United States v. Bailey*, 488 F.3d 363, 367-68 (6th Cir.), *cert. denied*, 128 S. Ct. 507 (2007).

Horne argues that his sentence – the minimum under the applicable Guideline range – is unreasonable, because of the "strong inference" that a district court would have imposed a lesser sentence, if it did not treat the Guidelines as mandatory. This argument is misplaced. The cases Horne identifies in support of his contention, *United States v. Gonzales*, 124 F. App'x 347, 349 (6th Cir. 2005), and *United States v. Hall*, 411 F.3d 651 (6th Cir. 2005), are inapposite. In *Gonzales*, a pre-*Booker* mandatory minimum sentence was vacated and the case was remanded for resentencing in light of *United States v. Booker,* 543 U.S. 220 (2005). 124 F. App'x at 349. *Hall* hinged on our determination that, based on explicit reservations expressed by the district court about imposing even the minimum sentence under the Guidelines range, it was likely that the district court would have imposed a lesser sentence "but for its belief that the U.S. Sentencing Guidelines Manual was mandatory." *Hall*, 411 F.3d at 653. In the present case, the record is replete with evidence that the district court knew and communicated to Horne that the Guidelines were advisory. Horne identifies no other basis to doubt the reasonableness of the district court's sentence. Thus, we hold that the district court did not commit plain error in imposing the sentence.

**V**

For the reasons set out above, we AFFIRM the district court's denial of the motion to suppress, the denial of the motion to withdraw the guilty plea, and the imposed sentence.